USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/13/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUSAN ANN HUBBARD,                              :
                                                :
              Plaintiff,                        :           **OPINION & ORDER**
                                                :
        -against-                               :           23-CV-883 (JLC)
                                                :
KILOLO KIJAKAZI,                                :
Acting Commissioner, Social Security            :
Administration,                                 :
                                                :
              Defendant.                        :
                                                :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

        Susan Ann Hubbard seeks judicial review of a final determination made by

Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration

("the Commissioner"),[1] denying her application for disability insurance benefits

under the Social Security Act.  Plaintiff has moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set

forth below, Hubbard's motion is denied.

### I. BACKGROUND

#### A. Procedural History

        On February 10, 2015, Hubbard filed a Title II application for Disability

Insurance Benefits ("DIB"), alleging a disability onset date of October 11, 2011.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this action.

Administrative Record ("AR") at 88, 201, Dkt. No. 18.[2]  Hubbard alleged she was unable to work due to impairments of her back, neck, right leg, left leg, and left knee.  *Id.* at 88.

The Social Security Administration ("SSA") denied Hubbard's claim on June 5, 2015.  *Id.* at 108–11.  On July 8, 2015, Hubbard requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 112–13.  On September 6, 2017, Hubbard, represented by counsel, appeared and testified before ALJ Sharda Singh.  *Id.* at 58–87.  In a decision dated November 22, 2017, ALJ Singh found Hubbard not disabled from October 11, 2011, through her date last insured of September 30, 2016, and denied her claims.  *Id.* 7–17.  Hubbard then sought review of ALJ Singh's decision by the Appeals Council, which was denied on November 13, 2018, rendering ALJ Singh's decision final.  *Id.* at 1–4.

Hubbard timely commenced an action in this District on January 10, 2019, pursuant to 42 U.S.C. § 405(g).  *Id.* at 1233.  The parties filed cross-motions for judgment on the pleadings on September 27, 2019 (plaintiff) and October 21, 2019 (defendant).  *Id.*  On April 30, 2021, the court remanded the case, and the Appeals Council vacated the Commissioner's final decision on June 8, 2022.  *Id.* at 1230.  Hubbard's case on remand was heard by ALJ Michael Stacchini on September 29, 2022.  On October 18, 2022, ALJ Stacchini found Hubbard not disabled.  *Id.* at 1166.

---

[2] Unless otherwise specified, the page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

The Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision final on December 18, 2022.[3]

Hubbard timely commenced this action on February 3, 2023, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Complaint ("Compl."), Dkt. No. 1.  The Commissioner answered Hubbard's complaint by filing the administrative record on May 15, 2023.  Dkt. No. 18.  On June 30, 2023, Hubbard moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Notice of Motion, Dkt. No. 22; Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 23.  On August 3, 2023, the Commissioner submitted a memorandum of law in opposition to Hubbard's motion ("Def. Mem."). Dkt. No. 24.  On August 18, 2023, Hubbard submitted reply papers ("Pl. Reply").  Dkt. No. 25.

## B. The Administrative Record

### 1. The Hearing Before the ALJ

Following remand, Hubbard appeared before ALJ Stacchini in White Plains, New York on September 29, 2022.  *Id.* at 1180.  Hubbard participated by phone and was represented by her attorney, Nikki Prasad.  *Id.*  Vocational Expert ("VE") Jeffrey Joy also participated by phone.  *Id.*  The hearing addressed the period of

---

[3] The Administrative Record does not specify when the Appeals Council denied Hubbard's request to review the ALJ decision.  However, Hubbard's Memorandum of Law alleges the Appeals Council denied Hubbard's request to review the ALJ's decision and the decision became final on December 18, 2022.  Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings at 6, Dkt. No. 23. The Commissioner does not suggest otherwise.

alleged onset date of disability, October 11, 2011 through September 30, 2016, the date last insured (hereafter "Relevant Period").[4]

### a. Hubbard's Testimony

At the time of the alleged onset date of disability, Hubbard was 53 years old. *Id.* at 180. Throughout the Relevant Period, she resided with her mother and father in Cornwall, New York, which is located in Orange County. *Id.* at 1189, 1339. Hubbard has a high school education, and prior work history as an accounting clerk. *Id.* at 1371.

Hubbard testified that she had not worked since 2011, in part because she underwent medical treatment for Paget's disease. *Id.* at 64–65, 1193.[5] Hubbard was diagnosed with Paget's disease before the onset of her alleged disability and underwent her last surgery in 2015. *Id.* at 1196. Hubbard further testified that her diagnosis with Paget's disease does not prevent her from working. *Id.* at 1191. Before being diagnosed with Paget's disease, Hubbard worked full-time as an accounting clerk at a company called Weatherly. *Id.* at 1194. She testified that her role as accounting clerk was eventually outsourced, causing her to be terminated in 2007. *Id.* at 1194.

---

[4] During the hearing, ALJ Stacchini referred to the alleged onset date of disability, October 11, 2011, through September 30, 2016, the date last insured, as the Relevant Period. *See* AR at 1188. A determination of Hubbard's disability status requires that the ALJ evaluate the Relevant Period before considering whether Hubbard is disabled through the present date. *Id.*

[5] Paget's disease is a rare form of breast cancer. *See* AR at 1371.

According to Hubbard, her disability and symptoms were triggered by a fall on her left knee. *Id.* at 1550. Throughout the Relevant Period, Hubbard mainly suffered from swelling in her left knee. *Id.* at 1194. When asked about treatment received since her first hearing, Hubbard testified that she periodically visits a chiropractor and takes Aleve and Tylenol when the pain is worse than usual. *Id.* at 1195. During the Relevant Period, Hubbard received treatment for her knee from her primary care physician. *Id.* at 1196. Despite being diagnosed with a lumbar strain by her chiropractor, Hubbard's primary care physician only completed x-ray and MRI examinations for her left knee. *Id.* Hubbard confirmed in her testimony that she did not receive treatment from a primary care physician or orthopedic specialist for her lumbar strain. *Id.*

During the Relevant Period, Hubbard could drive locally because the strain on her left leg did not affect her ability to drive short distances. *Id.* at 1189–90. Hubbard testified that she was able to complete light cleaning activities, such as wiping dishes and using a Swiffer. However, Hubbard's mother, who was in her early 80s during the Relevant Period, had to assist Hubbard with daily activities including grocery shopping and cooking, *id.* at 1190–91, and Hubbard's left leg restricted her from certain other cleaning activities altogether, such as vacuuming. *Id.* at 1189–90.

ALJ Stacchini then asked Hubbard about her diagnosis of obesity and if there have been any changes in her weight. *Id.* at 1197. During the Relevant Period,

Hubbard was 5'6" and weighed more than 300 pounds.[6]  *Id.* at 1198.  At the time of the hearing, Hubbard stated she had lost 51 pounds.  *Id.* at 1197.  Hubbard testified that she does not engage in light exercise and added that her leg pain prevents her from engaging in any exercise, including walking.  *Id.*

The ALJ asked Hubbard if her mental health condition has affected her ability to work.  *Id.* at 1198.  She testified that she has never received treatment for her mental health and clarified that her mental health did not affect her ability to work.  *Id.*

According to Hubbard, the combination of her knee impairment and her weight prevented her from working.  *Id.*  She further testified that the swelling of her leg and feet prevented her from putting on shoes.  *Id.*  The ALJ asked Hubbard if she had any other conditions or symptoms prior to September 2016 that were not mentioned during the hearing.  *Id.* at 1199.  Hubbard responded that she started having concentration issues and was diagnosed with Graves' disease in 2021.  *Id.*[7]

Hubbard's attorney then questioned her and asked about the frequency in which she elevates her left leg.  *Id.* at 1200.  Hubbard responded that she keeps her leg elevated for two hours each day and that her knee buckles from time to time.  *Id.* at 1201.  Between 2012 and 2013, Hubbard began using a cane and she began

---

[6] On February 10, 2015, the date on which Hubbard filed her claims, she stated that she measured 5'5".  At the ALJ Hearing, held on September 29, 2022, Hubbard testified that she measured 5'6".

[7] Hubbard was diagnosed with Graves' disease after her date last insured.  *See* AR at 1168.

using a walker in 2016.  *Id.*  When asked if she could carry a gallon of milk or a five-pound bag of potatoes, Hubbard testified that she could lift the milk but not the potatoes.  *Id.*

### b.  VE Testimony

The ALJ next questioned the VE, who testified that Hubbard's past relevant work as an accounting clerk is consistent with semi-skilled work (Dictionary of Occupational Titles ("D.O.T") 216.482–010) and the work is performed at the sedentary exertional level.  *Id.* at 1203.[8]  The ALJ then posed the following hypothetical to the VE:

> Assume a hypothetical individual of Hubbard's age, education, and work history, and who could engage in a full range of light work.  However, the hypothetical person would be limited to occasional climbing ramps and stairs but without climbing ladders, ropes, or scaffolds; with occasional balancing, stopping, kneeling, crouching, and crawling.

*Id.* at 1204.

The VE responded that such an individual could perform their past work as generally performed at both a light and sedentary level.  *Id.* at 1205.  However, the VE found that such an individual would be precluded from past work were they only able to sit for four hours and stand and/or walk for one hour.  *Id.* at 1205.  Moreover, where a hypothetical person was limited to simple, routine tasks, the individual would not be able to perform her past work.  *Id.*

---

[8] The VE found that although Hubbard's past relevant work was generally performed at a sedentary level, based upon the record, the VE believed the work was performed at a light level, which is not unusual in some settings.  AR at 1203.

The VE explained that the tolerated time off task is 7.5 percent of the workday.  *Id.*  The VE confirmed if an individual were to be off task for 15 percent of the workday in addition to regularly scheduled breaks, it would preclude all full-time work.  *Id.* [9]  The VE further testified that there are no jobs to which this hypothetical person they could transfer their skills.  *Id.*

### 2.  Relevant Medical Evidence

The parties have each provided a summary of the medical evidence contained in the administrative record.  *See* Pl. Mem. at 4–5; Def. Mem. at 7–8.  Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action.  *See, e.g.*, *Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at *1 (S.D.N.Y. July 24, 2020) (same), *adopted by* 2020 WL 4731421 (Aug. 14, 2020).  The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II.B below.

### 3.  The ALJ's Decision

On October 18, 2022, ALJ Stacchini denied Hubbard's application in a 10-page decision.  AR at 1165–74.  In doing so, he concluded that Hubbard was not disabled under sections 216(i) and 223(d) of the Social Security Act throughout the Relevant Period.  *Id.* at 1174.

At the first step of the sequential evaluation, the ALJ determined that Hubbard did not engage in substantial gainful activity during the Relevant Period.

---

[9] The VE explained that regularly scheduled breaks are 15 minutes in the morning, 15 minutes in the afternoon, and one-half hour to an hour break midday.  *See* AR at 1205.

*Id.* at 1167.  Proceeding to the second step, the ALJ concluded that Hubbard had the following severe impairments: left knee osteoarthritis, lumbar strain, and obesity.  *Id.*  He also considered evidence of Hubbard's medically determinable impairments of Paget's disease, Graves' disease, and disruptive mood disorder and found them to be non-severe when assessing Hubbard's residual functional capacity. *Id.* at 1168.[10]  At the third step, the ALJ concluded that Hubbard's impairments, considered singularly or in combination, did not satisfy any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id.* at 1170.

As to the fourth step, the ALJ considered the entire record and found that throughout the Relevant Period Hubbard had the residual functional capacity to perform sedentary work except that she was "unable to climb ladders, ropes, or scaffolds and was able to occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch or crawl."  *Id.* at 1171.  In arriving at this determination, the ALJ considered all of Hubbard's symptoms as she testified to them at the hearing, as well as medical reports and opinion evidence in the record.  *Id.* at 1171–74.  The ALJ discussed in detail the findings in the medical records, the doctors and facilities who examined or treated her, and which opinions he found controlling and why.  *Id.*

---

[10] The ALJ's decision listed Hubbard's lumbar strain as a severe impairment.  AR at 1167.  In a subsequent paragraph discussing non-severe impairments, the ALJ again listed lumbar strain.  *Id.* at 1168.  It appears the ALJ ultimately found Hubbard's lumbar strain to be non-severe because there is no medical evidence in the record to demonstrate functional limitations as a result of this impairment.  *See id.*

The ALJ concluded, in comparing Hubbard's residual functional capacity with the physical and mental demands of her prior work as an accounting clerk, that Hubbard was able to perform her past relevant work. *Id.* at 1174. Thus, the ALJ determined that Hubbard was not disabled and could perform her past relevant work as an accounting clerk. *Id.*

## II.   ARGUMENT

### A. Legal Standards

#### 1.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g). However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.

1996) (alteration in original) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

### 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim." *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)). Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella *v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner establishes whether the claimant is presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *See id.*; 20 C.F.R. § 404.1520(d).

13

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant bears the burden of proving his or her case at the first four steps of the sequential five-step framework. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. *Pratts*, 94 F.3d at 37 (citing 20 C.F.R.

14

§§ 404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."  *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g.*, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

15

### c.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in

determining whether a claimant is disabled under the [Social Security] Act." *Pena*

*ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (internal quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(d),

416.927(d)).[11]  A treating physician's opinion is given controlling weight, provided

the opinion as to the nature and severity of an impairment "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§

404.1527(c)(2), 416.927(d)(2).  The regulations define a treating physician as the

claimant's "own physician, psychologist, or other acceptable medical source who

provides [the claimant] . . . with medical treatment or evaluation and who has, or

has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R.

§ 404.1502.  Deference to such medical providers is appropriate because they "are

likely to be the medical professionals most able to provide a detailed, longitudinal

picture of [the] medical impairment(s) and may bring a unique perspective to the

medical evidence that cannot be obtained from the objective medical evidence alone

---

[11] Revisions to the regulations in 2017 included modifying 20 C.F.R. § 404.1527 to
clarify and add definitions for how to evaluate opinion evidence for claims filed
before March 27, 2017, like Hubbard's.  *See* Revisions to Rules Regarding the
Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).
Accordingly, this opinion and order applies the regulations that were in effect when
Hubbard's claims were originally filed with the added clarifications provided in the
2017 revisions.

or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2),

416.927(d)(2).

A treating physician's opinion is not always controlling.  For example, a legal

conclusion "that the claimant is 'disabled' or 'unable to work' is not controlling,"

because such opinions are reserved for the Commissioner.  *Guzman v. Astrue*, No.

09-CV-3928 (PKC), 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011) (citing 20 C.F.R.

§§ 404.1527(e)(1), 416.927(e)(1)); *accord Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

1999) ("A treating physician's statement that the claimant is disabled cannot itself

be determinative.").  Additionally, where "the treating physician issued opinions

that [are] not consistent with other substantial evidence in the record, such as the

opinion of other medical experts, the treating physician's opinion is not afforded

controlling weight." *E.R.*, 2013 WL 1210932, at *15 (quoting *Halloran v. Barnhart*,

362 F.3d 28, 32 (2d Cir. 2004)) (internal quotation marks omitted) (alteration in

original); *see also Snell*, 177 F.3d at 133 ("[T]he less consistent [the treating

physician's] opinion is with the record as a whole, the less weight it will be given.").

Importantly, however, "[t]o the extent that [the] record is unclear, the

Commissioner has an affirmative duty to 'fill any clear gaps in the administrative

record' before rejecting a treating physician's diagnosis." *Selian*, 708 F.3d at 420

(quoting *Burgess*, 537 F.3d at 129); *see Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.

1998) (discussing ALJ's duty to seek additional information from treating physician

if clinical findings are inadequate).  As a result, "the 'treating physician rule' is

inextricably linked to a broader duty to develop the record.  Proper application of

17

the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination." *Lacava v. Astrue*, No. 11-CV-7727 (WHP) (SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012) ("In this Circuit, the [treating physician] rule is robust."), *adopted by* 2012 WL 6621722 (Dec. 19, 2012).

To determine how much weight a treating physician's opinion should carry, the ALJ must consider the "*Burgess* factors" outlined by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96 (citation omitted); *see also Burgess*, 537 F.3d at 129; 20 C.F.R. § 404.1527(c)(2). This determination is a two-step process. "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella*, 925 F.3d at 95. Second, if, based on these considerations, the ALJ declines to give controlling weight to the treating physician's opinion, the ALJ must nonetheless "comprehensively set forth reasons for the weight" ultimately assigned to the treating source. *Halloran*, 362 F.3d at 33; *accord Snell*, 177 F.3d at 133 (responsibility of determining weight to be afforded does not "exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited" (referring to *Schaal*, 134 F.3d at 505 and 20 C.F.R. § 404.1527(d)(2))). If the ALJ decides the opinion is not entitled to controlling

weight, "[a]n ALJ's failure to 'explicitly' apply these '*Burgess* factors' when [ultimately] assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 419–20). The regulations require that the SSA "always give good reasons in [its] notice of determination or decision for the weight" given to the treating physician. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (alteration in original) (citations omitted). Indeed, "[c]ourts have not hesitate[d] to remand [cases] when the Commissioner has not provided good reasons." *E.R.*, 2013 WL 1210932, at *15 (quoting *Halloran*, 362 F.3d at 33) (second and third alteration in original) (internal quotation marks omitted).

Crucially, "an ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d. Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "As with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" *Id.* (quoting

*Aponte v. Sec'y of Health & Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still, an

ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit

intelligible plenary review of the record."  *Pena*, 2008 WL 5111317, at *10 (internal

quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir.

1988)).  "The ALJ must make this [credibility] determination 'in light of the

objective medical evidence and other evidence regarding the true extent of the

alleged symptoms.'"  *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.

1984)).

SSA regulations provide that statements of subjective pain and other

symptoms alone cannot establish a disability.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d

Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  The ALJ must follow a two-step

framework for evaluating allegations of pain and other limitations.  *Id.*  First, the

ALJ considers whether the claimant suffers from a "medically determinable

impairment that could reasonably be expected to produce" the symptoms alleged.

*Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an

impairment, at the second step, the ALJ must consider 'the extent to which [the

claimant's] symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence of record."  *Id.* (citing 20 C.F.R. § 404.1529(a)).

The kinds of evidence that the ALJ must consider in addition to objective medical

evidence include:

> 1. The individual's daily activities; 2. [t]he location,
> duration, frequency, and intensity of the individual's pain
> or other symptoms; 3. [f]actors that precipitate and
> aggravate the symptoms; 4. [t]he type, dosage,

> effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other
> symptoms; 5. [t]reatment, other than medication, the
> individual receives or has received for relief of pain or
> other symptoms; 6. [a]ny measures other than treatment
> the individual uses or has used to relieve pain or other
> symptoms (e.g., lying flat on his back, standing for 15 to
> 20 minutes every hour, or sleeping on a board); and 7.
> [a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other
> symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996

WL 374186, at *3 (SSA July 2, 1996)).  The ALJ need not list "each of the seven

factors" in his decision, as long as it shows he evaluated claimant's credibility "by

considering all of the relevant evidence."  *See, e.g., Lane v. Saul*, No. 18-CV-5523

(PGG) (OTW), 2020 WL 3965257, at *9 (S.D.N.Y. Mar. 16, 2020) (citation omitted),

*adopted by* 2020 WL 1876325 (Apr. 15, 2020).

## B. Analysis

Hubbard appeals the ALJ's decision on two grounds: first, she argues the

RFC determination is not supported by substantial evidence.  Pl. Mem. at 12.

Second, she contends the ALJ failed to account for her obesity in finding that she

was not disabled.  *Id.* at 13.  The Commissioner responds that the RFC

determination was supported by substantial evidence and the ALJ properly

considered Hubbard's obesity.  Def. Mem. 7–15.  The Court agrees with the

Commissioner.

### 1. Substantial Evidence Supports the ALJ's RFC Determination

Hubbard first argues that the ALJ failed to conduct a function-by-function assessment of her impairments because his decision did not include any meaningful discussion regarding her ability to stand, walk, sit, reach, and/or finger.  Pl. Mem. at 13–14.  Hubbard further contends that the ALJ failed to give sufficient weight to the treating source opinion of chiropractor Maria Perri, who treated Hubbard for more than a decade.  *Id.* at 14.

### a. The ALJ's RFC Determination is Supported by an Adequate Function-By-Function Analysis

Hubbard argues that the ALJ failed to conduct a function-by-function assessment of her impairments as he should have because SSR 96–8p "requires separate consideration 'of seven strength demands: i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling.'"  Pl. Mem. at 13.  However, there is no *per se* rule requiring remand when an ALJ does not perform a function-by-function analysis in making a disability determination.  *See, e.g., Cichocki v. Astrue,* 729 F.3d 172, 178 (2d Cir. 2013) (remand unnecessary where "the ALJ's decision did not include an explicit function-by-function analysis of all possible limitations, but did address all relevant limitations").  Further, an ALJ need not provide superfluous analysis of limitations about which there is no conflicting medical evidence.  *Id.* at 177 (citing *Zatz v. Astrue,* 346 F. App'x 107, 111 (7th Cir. 2009)).  Instead, the relevant inquiry is whether the ALJ applied the correct legal standards and whether his determination is supported by substantial evidence.  *Id.*

Here, the ALJ's decision did not include an explicit function-by-function analysis of all possible limitations.  However, the ALJ addressed all relevant limitations and explained how he supported his findings.  AR. at 1167–74.  At the second step, the ALJ found Hubbard to have the severe impairments of left knee osteoarthritis, lumbar strain, and obesity.  *Id.* at 1167.  Additionally, the ALJ considered Hubbard's medically determinable impairments of Paget's disease, Graves' disease, and mental impairments, and assessed that these impairments were non-severe when determining Hubbard's residual functional capacity.  *Id.* at 1168.  Notably, the ALJ found Hubbard was not precluded from performing work-related activities: "[I]n comparing the claimant's residual functional capacity with the physical and mental demands of [her] work, I find that the claimant was able to perform it as generally performed."  *Id.* at 1174.  Moreover, an ALJ need not recite every piece of evidence that contributed to his decision, so long as the record "permits us to glean the rationale of [his] decision."  *Mongeur,* 722 F.2d at 1040; *see also Novak v. Astrue,* No. 07-CV-8435 (SAS), 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008) (ALJ need not provide narrative discussion of each function, where "[he] discussed all of the evidence in detail—including the results of MRIs, physician evaluations, and [plaintiff's] testimony regarding his regular level of activity" before making RFC determination).

In determining Hubbard's physical limitations, the ALJ cited consultative physician Dr. Peter Graham's physical examination for the proposition that Hubbard had moderate limitations in prolonged standing and was moderately

limited in walking and heavy lifting.  AR. at 1172.  The ALJ found these limitations

did not preclude Hubbard from sedentary work.  *Id.* at 1173.  Further, the ALJ

factored in the opinion of psychiatric consultative examiner Dr. Leslie Helprin, who

concluded that Hubbard has no mental limitations.  *Id.*  The ALJ observed that

Hubbard was unable to climb ladders, ropes, or scaffolds and was able to

occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch or

crawl.  *Id.* at 1171.  The ALJ also relied on Hubbard's own testimony and her report

of daily living activities, which indicated that she performed tasks including

independent personal care, local driving, and light cleaning, to support his

conclusion that she was "leading an active existence in spite of her allegations."  *Id.*

at 1173.  Accordingly, the ALJ concluded that Hubbard was able to perform a range

of sedentary work.  *Id.*  He supported this determination based on the conservative

nature of care, the findings of the consultative examiner, Dr. Graham, and hearing

testimony.  *Id.*  This determination thus applied proper legal standards and was

supported by substantial evidence.

### b.  The ALJ Properly Weighed the Opinion Evidence of the Chiropractor

Hubbard next argues that the ALJ improperly weighed the opinion evidence

of Hubbard's chiropractor, Dr. Perri, solely because she is an "other source."  Pl.

Mem. at 15.  The Commissioner counters that the ALJ did not err in giving little

weight to Dr. Perri's opinion because her "opinion is not supported by any clinical

examination findings from treating doctors or examining doctors or diagnostic

testing results and is inconsistent with the reported activities of daily living, course of care and the opinion of the consultative examiner." Def. Mem. at 12.

On March 27, 2015, Dr. Perri diagnosed Hubbard with lumbar facet syndrome, knee segmental dysfunction, and muscle spasm through the spine. AR at 1172. Hubbard was instructed to take Tylenol. *Id.* Following her diagnosis, Dr. Perri opined that Hubbard was unable to lift or carry more than five pounds or stand for even two hours per day. The record makes clear that Hubbard was treated by Dr. Perri for several years. However, as the ALJ observed, Dr. Perri's opinion is not entitled to controlling weight because she is a chiropractor. *Id.* at 1173. In considering the weight of the opinion, the ALJ found the opinion is "not supported by any clinical examination findings from treating doctors or examining doctors or diagnostic testing results." *Id.* Moreover, he concluded that Dr. Perri's opinion is inconsistent with Hubbard's activities of daily living, course of care, and the opinion of the consultative examiner. *Id.*

As a preliminary matter, the ALJ did not err in giving little weight to Dr. Perri's opinion. The applicable regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). The regulations provide an exhaustive list of "acceptable medical source[s]," which does not include chiropractors. *See* 20 C.F.R. § 404.1502(a). Generally, "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgements about

25

the nature and severity of your impairments . . . ." *Diaz v. Shalala,* 59 F.3d 307, 314 n.8 (2d Cir. 1995) (citing 20 C.F.R. § 404.1513(a), (e)).  Because the regulations do not classify chiropractors as either physicians or "other acceptable medical sources," a chiropractor's opinion is not a medical opinion and as such is given "subordinate weight" under the regulations.  *Id.* (citing cases).  Accordingly, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion (including no weight at all) based on all the evidence before him.  *Id.*  In *Perez v. Barnhart,* for example, the ALJ properly decided that a chiropractor's findings should be given no weight where that evidence conflicted with the balance of medical evidence presented by physicians.  234 F. Supp. 2d 336, 341 (S.D.N.Y. 2002).  Therefore, where a chiropractor's opinion is contradicted by the balance of the objective medical evidence, as here, an ALJ's decision not to grant a chiropractor's opinion any weight is supported by substantial evidence.  *Id.*

In sum, Dr. Perri was not an acceptable medical source and the ALJ offered reasons why her opinion was granted little weight, finding it was not supported by any clinical examination findings.  AR at 1173.  Thus, the ALJ properly chose not to defer to her assessment of Hubbard's condition.

### 2.  The ALJ Properly Accounted for Hubbard's Obesity

Hubbard also argues that the ALJ erred by failing to consider her obesity in determining whether she was disabled.  Pl. Mem. at 16.  She further argues that "SSR 02-1 requires an evaluation at each step of the sequential analysis."  *Id.* at 17. At 5'6" and 300 pounds, Hubbard at the time of the hearing had a body mass index

("BMI") of 49, which the SSA recognizes as Level III obesity.[12]  AR at 1372.  She suggests the ALJ's failure to consider her obesity is a sufficient basis on its own to remand her case.  Pl. Mem. at 16–17.

Hubbard relies on *Hogan v. Astrue* to argue that the ALJ erred because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation," after finding plaintiff's obesity was a severe impairment.  Pl. Mem. at 17 (citing *Hogan v. Astrue,* 491 F. Supp. 2d 347, 355 (W.D.N.Y. 2007)).  In response, the Commissioner attempts to distinguish Hubbard's case from Hogan's because Hubbard has not shown that she did not retain the RFC to perform certain work because of her obesity.  Def. Mem. at 15; *see Talavera v. Astrue*, 500 F. App'x 9, 11–12 (2d Cir. 2012) (no failure to adequately consider claimant's obesity where several treating and examining physicians—all of whom were aware of her obesity—concluded that her weight only imposed mild limitations on her functional abilities).

Under applicable law, an ALJ is required to consider impairments a claimant says she has, or about which the ALJ receives evidence.  20 C.F.R. § 404.1512(a). As the court in *Guadalupe v. Barnhart* noted, "[o]besity is not in and of itself a disability," and courts have held that "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  No. 04-CV-7644 (HB), 2005 WL

---

[12] Obesity is determined by an individual's Body Mass Index, which is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m²).  *Boswell v. Comm'r of Soc. Sec.*, No. 21-CV-2364 (JPC) (GRJ), 2022 WL 3714669 at *3 (S.D.N.Y. 2022) (citation omitted).  According to the National Institutes of Health, a BMI of 30.0 or above is classified as "obesity."  *Id.*

2033380, at *6 (S.D.N.Y. Aug. 24, 2005).  Moreover, "the Second Circuit and courts in this district have found that, even when the ALJ fails to mention obesity in the ALJ's decision, an ALJ has sufficiently considered a claimant's obesity when the record includes medical opinions from doctors who were aware of the claimant's obesity." *Hill v. Berryhill,* No. 17-CV-02090 (SDA), 2018 WL 4462362, at *11 (S.D.N.Y. Sept. 18, 2018) (citing cases); *see Drake v. Astrue,* 443 F. App'x 653, 657 (2d Cir. 2011) (implicit analysis of obesity sufficient where ALJ factored claimant's obesity into RFC determination by relying on medical reports that noted claimant's obesity and provided overall assessment of claimant's work-related limitations). When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examination, a claimant's obesity is understood to have been factored into his decision.  *Guadalupe,* 2005 WL 2033380, at *6 (citing *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004)).

When making his disability determination here, the ALJ considered Hubbard's obesity in several respects.  First, he identified obesity as one of Hubbard's "severe impairments." AR at 1167.  He also took into consideration the medical record evidence that noted that Hubbard's physical examinations show normal clinical findings with some decreased range of motion and obesity, including evidence that Hubbard's obesity restricted her postural activities.  *Id.* at 1173. Furthermore, the ALJ considered Hubbard's testimony that she was obese but had recently lost some weight.  *Id.; see Mancuso v. Astrue,* 361 F. App'x 176, 178 (2d Cir. 2010) (ALJ did not err in consideration of obesity where there was "no factual basis

for thinking that any additional and cumulative effects of obesity" limited claimant's ability to perform light work) (citation omitted).  The ALJ also discussed Hubbard's weight in the context of the medical examinations and relied on evidence of Hubbard's treatment, which he determined to be "conservative in nature."  Based on these assessments, the ALJ ultimately found Hubbard capable of performing past relevant work as generally performed.  AR at 1174.

Hubbard's contention that the ALJ erred in declining to consider her obesity at steps four and five is thus unconvincing. The ALJ considered and evaluated the medical evidence to support his determination—at step four—that Hubbard's obesity limits her to a range of sedentary work with additional postural limitations. AR at 1171.  In sum, the ALJ properly relied on the medical evidence before him to determine that Hubbard's obesity did not sufficiently limit her to render her disabled under the Act.

### III.  CONCLUSION

For the foregoing reasons, Hubbard's motion for judgment on the pleadings is denied. The Clerk is directed to enter judgment for the Commissioner and close this case.

**SO ORDERED.**

Dated: December 13, 2023
New York, New York

_____
JAMES L. COTT
United States Magistrate Judge